<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

HEATHER LYNN HOFFMAN,       )
                                  )
           Plaintiff      )    Civil Action
                                  )    No. 12-cv-06165
         v.            )
                                  )
PALACE ENTERTAINMENT, also known )
  as "Dutch Wonderland"; and    )
FESTIVAL FUN PARKS LLC,[1]       )
                                  )
           Defendants     )

*    *    *

APPEARANCES:

        HEATHER LYNN HOFFMAN
           Pro Se

        HEATHER Z. STEELE, ESQUIRE
        RISA B. BOERNER, ESQUIRE
           On Behalf of Defendants

*    *    *

<u>**O P I N I O N**</u>

JAMES KNOLL GARDNER
United States District Judge

---

[1]      Although plaintiff pro se identifies both "Palace Entertainment a/k/a Dutch Wonderland" and "Festival Fun Parks LLC" each as defendants in her form Complaint, the disclosure statement filed by defense counsel, Heather Z. Steele, Esquire, states that "Wonderland Management, LLC, [doing business as] Dutch Wonderland is 100% owned by Festival Fun Parks LLC [doing business as] Palace Entertainment."  (Docket entry number 7 in this matter.)

      In other words, defendants assert that Festival Fun Parks operates under the business name of "Palace Entertainment" and is the sole owner of Wonderland Management, LLC, which in turn operates under the name "Dutch Wonderland".

This matter is before the court on Defendant Festival Fun Parks, LLC's Motion to Dismiss.[2]

For the reasons expressed below, I deny the motion. Specifically, I deny the motion because plaintiff's disability-discrimination claim is not untimely, and because plaintiff has sufficiently alleged a claim of disability discrimination under the Americans with Disabilities Act of 1991 ("ADA")[3], and the Pennsylvania Human Relations Act ("PHRA")[4], and a claim under Pennsylvania's Criminal History Record Information Act[5].

## JURISDICTION

This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over plaintiff's claim under the Americans with Disabilities Act of 1991, as amended, 42 U.S.C. §§ 12112-

---

[2]         The within motion was filed on April 5, 2013, together with Defendant Festival Fun Parks, LLC's Memorandum of Law in Support of Motion to Dismiss ("Defendant's Memorandum"), and Exhibit A to the memorandum of law, which exhibit is a copy of plaintiff's Complaint for Employment Discrimination filed November 15, 2012 (Document 3).

         Plaintiff pro se filed her Objections to Motion to Dismiss on May 1, 2013 ("Plaintiff's First Objections"), together with Exhibits A through C to her Objections.  Plaintiff's exhibits consist of a one-page Member Explanation of Benefits from an insurance company for an April 19, 2013 visit plaintiff made to an emergency room (Exhibit A), a two-page Notice of Class Action Settlement in a Fair Credit Reporting Act case (Exhibit B), and an undated letter responding to an inquiry plaintiff made about a November or December 2009 ultrasound ordered by Ob-Gyn of Lancaster, Pennsylvania (Exhibit C).  Plaintiff does not explain, nor can I discern, how those exhibits relate to her opposition to the within motion to dismiss.

[3]         42 U.S.C. §§ 12112 to 12117.

[4]         Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951 to 963.

[5]         18 Pa.C.S.A. §§ 9101 to 9183.

12117.  This court has supplemental jurisdiction over plaintiff's pendent state-law claims.  See 28 U.S.C. § 1367.

### VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Lancaster County, Pennsylvania, which is located in this judicial district.  See 28 U.S.C. §§ 118, 1391(b).

### PROCEDURAL HISTORY

Plaintiff initiated this action on October 31, 2012 by filing an Application to Proceed in District Court Without Prepaying Fees and Costs.[6]

By Order dated November 14, 2012 and filed November 15, 2012, I granted plaintiff's application to proceed in forma pauperis.  Additionally, the November 14, 2012 Order directed that plaintiff's Complaint be filed and served upon defendants.

Defendant Festival Fun Parks filed the within motion to dismiss on April 5, 2013.  Plaintiff pro se filed two

---

[6]     Plaintiff's application was filed together with the following documents: a completed form Complaint for Employment Discrimination ("Complaint"); a copy of the Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination No. 530-2011-01981; an attachment to paragraph E, page 3 of her Complaint; a copy of the EEOC Notice of Right to Sue dated July 31, 2012; a Notice of Determination mailed on May 19, 2011 to plaintiff from the Office of Unemployment Compensation Benefits, Department of Labor and Industry, Commonwealth of Pennsylvania; a handwritten request to reserve the right to seek appointment of counsel; two pages containing type- and hand-written material pertaining to the use of criminal history information in Pennsylvania; and a single-page medical document concerning plaintiff dated September 28, 2012 which lists "acute renal failure" as the primary diagnosis.

documents objecting to the motion to dismiss: the first was filed May 1, 2013; and the second was filed May 8, 2013.

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)(abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.

In determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." Fowler, 578 F.3d at 210 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," Fowler, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940)(internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Fowler</u>, 578 F.3d at 211 (quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>, 556 U.S. at 679-680, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

In addition to being subject to Rule 8 and Rule 12 of the Federal Rules of Civil Procedure, proceedings in forma pauperis are governed by 28 U.S.C. § 1915.  Section 1915(e) provides, in pertinent part, that "the court shall dismiss the case at any time if the court determines that...the action...fails to state a claim on which relief may be granted".  28 U.S.C. § 1915(e)(2)(ii).

Notwithstanding the above, "[t]he obligation to liberally construe a pro se litigant's pleadings is well-established." <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 698 (3d Cir. 2013)(quoting <u>Higgs v. Attorney General of the United States</u>, 655 F.3d 333, 339 (3d Cir. 2010)); see <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976).  In so doing, the courts "are willing to apply the relevant legal principle even when the complaint has failed to name it." <u>Id.</u> (citing <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003).

Nevertheless, a plaintiff acting pro se must still plead the essential elements of his or her claims and is not excused from conforming to the standard rules of civil procedure. <u>McNeil v. United States</u>, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21, 28-29 (1993).

### **FACTS**

Taking all of the well-pled facts contained in the Complaint and attached materials as true, and liberally construing plaintiff's pleading because she is proceeding pro se, as I am required to do under the applicable standard of review, discussed above, the pertinent facts are as follows.

Plaintiff Heather Lynn Hoffman was employed in a seasonal, part-time position as a Water Area Attendant at Dutch

Wonderland from March 2009 through the end of December 2010.[7]
Dutch Wonderland is an amusement park and family entertainment
facility located in Lancaster, Pennsylvania.[8]  Wonderland
Management, LLC, does business as Dutch Wonderland and is 100%
owned by defendant Festival Fun Parks LLC.  Defendant Festival
Fun Park does business as Palace Entertainment.[9]

In early 2010, after the conclusion of the 2009
season, Hershey Entertainment (then-operator of Dutch
Wonderland) extended an offer to plaintiff that she return to
her job for the 2010 season.  Plaintiff accepted the offer and
returned for the 2010 season to work as a Water Area Attendant.[10]

During the 2010 season, plaintiff had absences from
work which (though supported by doctor's notes) became an issue
of concern for her employer.  More specifically, plaintiff was
assessed "points" for her absences and was given a notice
informing her that she could face discipline (up to, and
including, firing) if her attendance did not improve.[11]

Plaintiff provided doctors notes for all of her
absences, including those for a single-day absence even though

---

[7]        EEOC Charge of Discrimination at page 1.

[8]        Defendant Festival Fun Park's Memorandum at page 3, footnote 4.

[9]        Docket entry number 7 in this matter.

[10]        EEOC Charge of Discrimination at page 1.

[11]        Id.

Hershey Entertainment's company policy only required a doctor's note for an absence of three or more days.  All points assessed against plaintiff should have been removed from her permanent employment record.[12]

Plaintiff was not fired and continued to work at Dutch Wonderland through the conclusion of the 2010 season on December 31, 2010.  However, at the conclusion of the 2010 season, plaintiff was informed that she was not being invited back for the 2011 season because of issues with her attendance.  Nonetheless, plaintiff was advised that if she was interested, she could apply for employment with defendant, which she identifies as "Palace Entertainment a/k/a Dutch Wonderland".[13]

In January 2011, plaintiff applied for employment at Dutch Wonderland as a Security Officer.[14]  On the application, plaintiff checked the box indicating "no" with respect to any prior convictions for a misdemeanor or felony.[15]

Plaintiff was interviewed for that position and, during the interview, was asked "whether the employer could depend on [her] to come to work".  Plaintiff assured her interviewer -- a woman also named Heather -- that during the

---

[12]     Complaint, Attachment to paragraph 3, page 1, at paragraph 1.

[13]     EEOC Charge of Discrimination at page 1.

[14]     Id.

[15]     Complaint, Attachment to paragraph 3, page 1, at paragraph 2.

upcoming 2011 season, she could be relied upon to be on the job.[16]

During the interview, plaintiff further explained to the interviewer that she suffered a miscarriage of twins in December 2009 which "caused [her] some seizure activity" which is "petite mal in nature", and for which she is required to take prescription medication and seek medical treatment if an episode occurs.[17]

Plaintiff was offered the position of Security Officer at Dutch Wonderland for the 2011 season.  However, "questionable

---

[16]        EEOC Charge of Discrimination at page 1.

[17]        Complaint, Attachment to paragraph 3, page 1, at paragraph 1.

The Mayo Clinic provides the following description of petit mal seizure activity:

> Absence seizure — also known as petit mal — involves a brief, sudden lapse of consciousness.  Absence seizures are more common in children than adults. Someone having an absence seizure may look like he or she is staring into space for a few seconds.
>
> Compared with other types of epileptic seizures, absence seizures appear mild. But they can be dangerous. Children with a history of absence seizure must be supervised carefully while swimming or bathing because of the danger of drowning. Teens and adults may be restricted from driving and other potentially hazardous activities.
>
> Absence seizures usually can be controlled with anti-seizure medications. Some children who have absence seizures also have grand mal seizures. Many children outgrow absence seizures in their teen years.

Absence Seizure (petit mal seizure), Diseases and Conditions, Mayo Clinic, *available at* http://www.mayoclinic.org/diseases-conditions/petit-mal-seizure/basics/definition/con-20021252 (last accessed January 14, 2014).

issues came up about a 2002 arrest"[18] during a background check of plaintiff and, although plaintiff denied any wrongdoing, the offer to work as a Security Officer at Dutch Wonderland was rescinded on April 15, 2011.[19]  Palace Entertainment informed plaintiff that it rescinded the offer of employment because the company did not feel that plaintiff was telling the truth.[20]

Plaintiff alleges that the 2002 arrest was "false in nature" and that she demonstrated that fact to Meghan Riehl (the person plaintiff dealt with concerning the background check process).  Plaintiff further alleges that the background check came from a credit company and not from the Pennsylvania State Police, and that it was not an accurate record.[21]

Plaintiff alleges that Megan Riehl, a Human Resources Manager with Festival Fun Park LLC, was "unprofessional toward [her] in numerous ways" and that she provided Ms. Riehl with a copy of an Order and Opinion of Judge Perezous[22] concerning plaintiff's prior arrest.  Plaintiff believes that her 2002

---

[18]     Plaintiff does not specify the offense(s) for which she was arrested.

[19]     EEOC Charge of Discrimination at page 1.

[20]     Id. at page 2.

[21]     Complaint, Attachment to paragraph 3, page 1, at paragraph 2.

[22]     Although it is not specified in plaintiff's Complaint, I assume plaintiff is referring to Senior Judge Michael J. Perezous of the Court of Common Pleas of Lancaster County, Pennsylvania.

arrest was improper and should have shown up on her background check.[23]

## DISCUSSION

### Plaintiff's Claims

Plaintiff alleges disability discrimination by defendants in violation of the Americans with Disabilities Act of 1991 and the Pennsylvania Human Relations Act arising from both the decision at the end of the 2010 season not to invite plaintiff to continue in her position as a Water Area Attendant for the 2011 season, which effectively terminated plaintiff's annual, seasonal employment at Dutch Wonderland, and from the decision to rescind the offer of a Security Officer position at Dutch Wonderland made in early 2011 after plaintiff applied, and interviewed, for that position during the 2011 season.

Plaintiff also alleges that defendants rescinded the offer for the 2011 Security Officer position (and, thus, refused to re-hire plaintiff) based upon a 2002 arrest that came up in a background check conducted after plaintiff's interview for, and the offer of, the Security Officer position.  Plaintiff further alleges that the background check did not produce an accurate record and that defendants violated Pennsylvania's Criminal History Record Information Act by rescinding their offer of employment based upon that 2002 arrest.

---

[23]        Complaint, Attachment to paragraph 3, page 1, at paragraph 2.

-12-

### Motion to Dismiss

Defendant Festival Fun Parks contends that plaintiff's Complaint should be dismissed in its entirety and with prejudice.  Specifically, defendant Festival Fun Parks contends that plaintiff's disability discrimination claim is untimely. Defendant also contends that plaintiff fails to state such a claim because she has not sufficiently pled a disability, nor has she pled sufficient facts to support a plausible inference that she suffered an adverse employment action as a result of her disability.  Defendant Festival Fun Parks further contends that plaintiff has failed to state any state-law claim asserted in addition to her disability discrimination claim under the PHRA.

To the extent that plaintiff responds to these arguments, she contends that her claims are not untimely and she has pled sufficient facts to entitle her to relief.

### Untimeliness

Discrimination claims under the ADA must be filed within 90 days after the plaintiff receives notice of the EEOC's dismissal of the claim.  Carl v. Western-Southern Life Insurance Company, 2010 WL 3860432 (E.D.Pa. Sept. 30, 2010))(Sanchez, J.) The 90-day limitations period generally begins to run on the date the plaintiff receives a right-to-sue letter from the EEOC.

<u>Ebbert v. DaimlerChrysler Corporation</u>, 319 F.3d 103, 115 n.14 (3d Cir. 2003).

Defendant contends that plaintiff's federal disability discrimination claim should be dismissed as untimely because plaintiff was required to file her complaint within 90 days of July 31, 2012 (the date that appears on the right-to-sue letter she received from the United States Equal Employment Opportunity Commission ("EEOC")) -- that is, on or before October 29, 2012.[24]

The United States Court of Appeals for the Third Circuit has explained that

> the time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date [s]he receives a right-to-sue letter from the agency.  The EEOC's right-to-sue letter also informs the claimant that he or she has ninety days after receipt in which to file suit.  Therefore, the date on which [plaintiff] received the letter becomes critical.
>
> When the actual date of receipt is known, that date controls.  However, in the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it.

<u>Seitzinger v. The Reading Hospital and Medical Center</u>, 165 F.3d 236, 239 (3d Cir. 1999)

Moreover, the 90-day period is "akin to a statute of limitations rather than a jurisdictional bar.  Therefore, the time limit is subject to tolling."  <u>Id.</u> at 239-240.  "Under

---

[24]        Defendant's Memorandum at pages 6-7.

equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Id. at 240.

Plaintiff contends that she received the EEOC's July 31, 2012 right-to-sue letter sometime between August 4, 2012 and August 6, 2012.[25]  If plaintiff received the right-to-sue letter on August 4, 2012, she would have had until November 2, 2012 to initiate a timely action.  Even if the date of receipt for the July 31, 2012 letter is considered unknown, 90 days from July 31, 2012 (plus 3 additional days because the letter was mailed) would have given plaintiff until November 1, 2012 to initiate a timely action.

Plaintiff, who is representing herself, initiated this action on October 31, 2012 by filing her Application to Proceed in District Court Without Prepaying Fees and Costs, together with a United States District Court for the Eastern District of Pennsylvania -- Designation Form (form number Civ. 608), and a Case Management Track Designation Form (form number Civ. 660).

Defendant correctly notes that "[f]rom the docket, it does not appear that Plaintiff's Complaint was filed along with

---

[25]        Plaintiff's Objections at ¶ 1a, on page 1 of 9.

her Application to Proceed in District Court Without Prepaying
Fees and Costs."[26]

Although docket entry number 1 does not indicate that
plaintiff submitted her pleading together with her application
to proceed in forma pauperis, plaintiff did in fact include
together with that application the following documents: the
Complaint; a copy of the Charge of Discrimination No. 530-2011-
01981; an attachment to paragraph E, page 3 of her Complaint; a
copy of the EEOC Notice of Right to Sue dated July 31, 2012; a
Notice of Determination from the Office of Unemployment
Compensation Benefits, Department of Labor and Industry,
Commonwealth of Pennsylvania mailed to plaintiff on May 19,
2011; a handwritten request to reserve the right to seek
appointment of counsel; two pages containing type- and hand-
written material pertaining to the use of criminal history
information in Pennsylvania; and a single-page medical document
concerning plaintiff dated September 28, 2012 which lists "acute
renal failure" as the primary diagnosis.

Accordingly, my Order dated November 14, 2012 and
filed November 15, 2012, which granted plaintiff's request to
proceed in forma pauperis, further directed that "*[t]he
complaint is to be filed*" and did not give plaintiff until a

---

[26]      Defendant's Memorandum at page 1, footnote 1.

certain date to file a complaint.[27]  In accordance with that
Order, the Clerk of Court docketed plaintiff's Complaint and
supporting papers that same day, November 15, 2012.[28]

Because plaintiff's Complaint and supporting documents
were submitted together with her application to proceed in forma
pauperis, I consider October 29, 2012 as the date of filing of
plaintiff's Complaint.  Alternatively, even if November 15, 2012
(the date plaintiff's Complaint was docketed pursuant to my
Order granting her application to proceed in forma pauperis)
must be considered the date of filing of plaintiff's Complaint
for purposes of the 90-day window, equitable tolling is
appropriate because plaintiff's Complaint was submitted
October 29, 2012 (within the 90-day window) and she did not
cause it to be filed November 15, 2012 (outside the 90-day
window).

For those reasons, I deny the within motion to dismiss
to the extent that it seeks to dismiss plaintiff's disability
discrimination claim as untimely.

## Failure to State a Claim of Disability Discrimination

To establish a prima facie case of disability
discrimination, plaintiff must plead sufficient facts to raise a
plausible inference that: (1) she is disabled within the meaning

---

[27]      Order of the undersigned dated November 14, 2012 and filed
November 15, 2012 (emphasis added).

[28]      See docket entry number 3.

-17-

of the ADA; (2) she is otherwise qualified for the job with or without a reasonable accommodation; and (3) she was subjected to an adverse employment action as a result of discrimination.  See Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010).

An individual is disabled under the ADA if she actually has, has a record of having, or is regarded as having, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1).

For purposes of defining disability, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

In addition, the ADA states that "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B).

The regulations promulgated by the United States Equal Employment Opportunity Commission (EEOC) pursuant to the ADA

also define, and provide examples of, major life activities. Specifically, the EEOC regulations provide, in pertinent part, that

> [m]ajor life activities include, but are not limited to:
>
>> (i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and
>>
>> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. § 1630.2(i)(1)(i)-(ii).

"Physical or mental impairment", for the purposes of the ADA, is any "physiological disorder, or condition... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1); see Sulima, 602 F.3d at 185.

"'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(I); see also 42 U.S.C. §§ 12101, 12102(4)(A)-(C).  An impairment is an ADA disability when it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).  Indeed, the EEOC regulations promulgated under the ADA explain that "[a]n impairment need not prevent or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  Id.

The EEOC regulations make clear that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and is to be interpreted relative to the capabilities of most people in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

Defendant Festival Fun Park contends that plaintiff's Complaint fails to state a claim of disability discrimination because she has not pled sufficient facts from which the court could conclude that she was, or is, disabled within the meaning of the ADA.[29]  Specifically, defendant Festival Fun Parks contends that plaintiff's Complaint and attached materials simply refer to various ailments or medical conditions -- a miscarriage, petit mal seizure activity, high blood pressure,

---

[29] Defendant's Memorandum at page 8.

battered-woman syndrome, and acute renal failure -- without
(A) identifying any one, or multiple, of them as the
disability(ies) upon which she bases her claim, or
(B) specifying which major life activity is substantially
limited by her disability(ies) and providing facts showing how
she is so limited.[30]

Additionally, defendant contends that plaintiff has
not pled sufficient facts to support a plausible inference that
she was subject to an adverse employment action as a result of
disability discrimination.[31]  Specifically, defendant Festival
Fun Parks contends that plaintiff provides nothing more than
conclusory allegations that her disability caused defendant to
rescind the offer of employment as a Security Officer for the
2011 season and that her Complaint contains repeated allegations
that the 2011 offer was rescinded based upon the results of the
allegedly-inaccurate background check.[32]

To the extent that plaintiff responds to these
arguments in her filings, she asserts that she "[pled] her case
factually and deserves proper redress."[33]

---

[30]       Defendant's Memorandum at pages 8-9.

[31]       Id. at page 9.

[32]       Id. at pages 9-10, and page 9, footnote 12.

[33]       Plaintiff's Objections at ¶ 2, on page 4 of 9.

-21-

Here, based upon the law set forth above, and construing the Complaint and materials attached thereto liberally, as I am required to do with the pleadings of parties who are preceding pro se, I conclude that plaintiff is seeking to assert a disability discrimination claim based upon her petit mal seizure condition.

Defendant is correct that plaintiff referred to having high blood pressure and battered-woman syndrome, and that she was recovering from acute renal failure.  However, each of those ailments were mentioned in support of plaintiff's request to reserve the right to seek appointment of counsel at a later date.  Notably, those conditions were not mentioned in plaintiff's Complaint itself, or in her attachment to para-graph E, page 3 or in the EEOC Charge of Discrimination which plaintiff expressly referred to as containing the factual basis for her claims.

Because plaintiff has pled facts sufficient to support a plausible inference that her seizures disorder substantially limits her ability to work (by requiring her to take unscheduled absences for medical treatment), I deny the motion to the extent that defendant seeks to dismiss plaintiff's disability discrimination claim based upon her alleged failure to plead a disability.

-22-

Similarly, defendant contends that plaintiff has not pled any facts to support a plausible causal connection between her alleged disability and the decision not to invite plaintiff back as a Water Area Attendant for the 2011 season, and, then to rescind the offer of employment as a Security Officer for the 2011 season after she applied for, was interviewed, and was offered that position.  I disagree because plaintiff avers that she submitted doctors notes for her absences during 2010 season (which allegedly were seizure-related) and that she discussed her seizure condition during the January 2011 interview for the Security Officer position.

While it is certainly not the only plausible interpretation of the events described (even if in a disjointed manner) in plaintiff's Complaint and attached documents, a plausible inference could be drawn that plaintiff's employer (A) knew of her seizure condition (and the limitations it placed upon her) based upon the doctor's notes she submitted during the 2010 season and her discussion of the seizure condition during the January 2011 interview, and (B) declined to extend plaintiff's employment as a Water Area Attendant for the 2011 season because of her seizure disorder, and later rescinded its offer of a Security Officer position as soon as an alternative explanation (the 2002 arrest) for the rescission surfaced, in order to avoid having to deal with plaintiff's disability.

-23-

Accordingly, I deny defendant's motion to the extent that it seeks to dismiss plaintiff's disability discrimination claim based upon the sufficiency of plaintiff's Complaint and attached documents filed pro se.

### Criminal History Record Information Act

Plaintiff's does not allege (and her Complaint and supporting papers to not support a plausible inference) that defendant did not invite her back as a Water Area Attendant for the 2011 season based upon her 2002 arrest.

However, as discussed above, plaintiff alleges that she applied, was interviewed, and received an offer of employment for the 2011 season as a Security Officer at Dutch Wonderland.  Plaintiff further alleges that the offer was subsequently rescinded based upon a 2002 arrest that appeared on plaintiff's background check.

Pennsylvania's Criminal History Record Information Act, 18 Pa.C.S.A. §§ 9101-9183 (hereinafter, the "Act"), which plaintiff cites in the supporting materials to her Complaint, provides, in pertinent part,

> (a) General rule. -- Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, *it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.*
>
> (b) Use of information. -- Felony and misdemeanor *convictions may be considered* by the employer *only to*

> *the extent to which they relate to the applicant's*
> *suitability for employment in the position for which*
> *he has applied.*
>
> (c) Notice. -- The employer shall notify in writing
> the applicant if the decision not to hire the
> applicant is based in whole or in part on criminal
> history record information.

18 Pa.C.S.A. § 9125.

The term "criminal history record information", as defined by the Act, includes "notations of arrests". 18 Pa.C.S.A. § 9102.

The Act further provides that "[a]ny person aggrieved by a violation of the provisions of this chapter...shall have the substantive right to bring an action for damages by reason of such violation in a court of competent jurisdiction." 18 Pa.C.S.A. § 9183(b)(1).

Plaintiff avers sufficient factual information in her Complaint and attached documents to support a plausible inference that her employer (A) received criminal history record information pertaining to plaintiff when it conducted a background check after her January 2011 interview for the Security Officer position at Dutch Wonderland, (B) used that criminal history record information (specifically, the existence of a 2002 arrest) in deciding to rescind its offer to plaintiff of a Security Officer position for the 2011 season, and (C) thereby did not use the criminal history record information

in accordance with section 9125 of the Act (in that the information concerned an arrest, and not a misdemeanor or felony conviction related to plaintiff's suitability for the position).

Accordingly, plaintiff has pled sufficient factual information to assert a claim pursuant to section 9183(b)(1) for violation of section 9125 of the Criminal History Record Information Act.  Therefore, I deny defendant's within motion to the extent it seeks to dismiss that claim.

## CONCLUSION

For the foregoing reasons, I deny Defendant Festival Fun Parks, LLC's Motion to Dismiss.